# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA RODRIGUEZ,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>  Defendant. | 1:06cv1233 OWW DLB<br><br>FINDINGS AND RECOMMENDATION<br>REGARDING PLAINTIFF'S SOCIAL<br>SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Juanita Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application for supplemental security income on December 31, 2003, alleging disability since June 20, 2002, due to mental illness. AR 56-59, 71-75. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Administrative Law Judge ("ALJ").  AR 37-41, 43-47, 48.  On December 6, 2005, ALJ Sean Teehan held a hearing.  AR 172-209.  ALJ Teehan denied benefits on April 21, 2006.  AR 12-20. On August 10, 2006, the Appeals Council denied review.  AR 5-8.

<u>Hearing Testimony</u>

ALJ Teehan held a hearing on December 6, 2005, in Fresno, California.  Plaintiff appeared with her attorney, Robert Ishikawa.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 172.

Plaintiff testified that she was 44 years old at the time of the hearing and completed the ninth grade in special education.  She could read but could not remember what she read ten minutes later and she needed help filling out a job application.  She worked as a hotel housekeeper from 1998 through 2001.  AR 179-180.  Plaintiff told her attorney that she has not worked anywhere else in the past 15 years and stated that she could not work because she "think[s] that somebody is going to harm [her] kids if [she] leave[s] them for too long" and she starts getting "nervous and just worried, and [] can't concentrate on work."  AR 182.

When questioned by the ALJ, Plaintiff indicated that she worked at Foster Farms from February through April 2002.  AR 182.  She also worked making light fixtures, but didn't last for more than three weeks.  AR 183.

Plaintiff explained that she has been seeing a counselor, Cesar Garcia, every one to two weeks for the past three years.  She is on medication and feels that it helps.  She has no side effects.  She has flashbacks of past trauma once a week and goes to her room for about three hours.  AR 186-187.  She has problems sleeping and doesn't like to be around crowds.  She has thoughts of suicide less than once a month.  AR 188.  She has panic attacks when she is around a lot of people and is unable to go to stores because of them.  AR 189.  Plaintiff estimated that she has panic attacks monthly because that is how often she goes shopping.  AR 189.  She doesn't like leaving her house because she feels safe there, but goes everyday to pick up her children at the bus stop.  She has five children, ages 6 to 14.  AR 190.

Plaintiff further testified that she has problems with concentration and attention.  She goes to church and does not worry about the people there because she feels "like they're good

people so I can be in there." AR 191. She did not have any problems with her coworkers or supervisors when she worked at the hotel and didn't know why she couldn't return. AR 192.

During the day, Plaintiff testified that she listens to Christian music, washes clothes, cleans the house and just stays inside. She gets her children off to school and picks them up from the bus stop. AR 192. She also cooks them dinner. AR 193. She does not drive. AR 193. Plaintiff receives AFDC, SSI for her children and food stamps. AR 193-194. She is able to take care of that money. AR 194. Plaintiff explained that she wished she could concentrate and that the only reason she could not was because she wants to protect her children and "everything that's happened in our lives, it just made this, I guess, the way I feel now." AR 194. Plaintiff was in an abusive relationship about three years ago. AR 196.

Plaintiff testified that she also could not work because she forgets things a lot. She wants to work, but doesn't think she could "as much." AR 197.

Other than Paroxetine and Ambien, Plaintiff takes Tylenol for headaches that she gets every other day. AR 198. The Tylenol helps a little bit. She has not told her doctors about the headaches because she did not think that they were something bad. AR 198. Her headaches started three months ago, and although they hurt and she has to lay down, they go away and then she forgets to tell her doctor. AR 199.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education, language and work background. This person could concentrate and follow directions, and perform simple, repetitive tasks and complex tasks. After meeting coworkers and supervisors, this person could deal with them without any problem. This person could deal with the public on an occasional basis, could comply with safety practices and could deal with routine changes. The VE testified that this person could perform Plaintiff's past relevant work as a housekeeper and her other past jobs, with the exception of cashier. AR 203-204.

For the second hypothetical, the ALJ asked the VE to assume a person who could perform simple, repetitive tasks, i.e., jobs with one or two step instructions. This person could have limited contact with the public. This person could perform Plaintiff's past relevant work as a housekeeper and her other past jobs, with the exception of cashier. AR 204.

3

For the third hypothetical, the ALJ asked the VE to assume the limitations set forth in the first hypothetical. This person could also understand and remember very short and simple instructions, but could not understand and remember detailed instructions. This person could maintain attention and concentration for two hours at a time, but could not perform activities within a schedule, maintain regular attendance and be punctual. This person could occasionally sustain an ordinary routine, occasionally work in proximity to others, occasionally make simple work-related decisions, and occasionally interact with the public. This person could not complete a normal workday or workweek without interruption from psychologically based symptoms and could not perform at a consistent pace without an unreasonable number and length of rest periods. This person could ask questions, and occasionally accept instructions and respond appropriately to criticism from supervisors. The VE testified that this person could not perform Plaintiff's past relevant work because he would be functioning "at best" a third of the day. AR 205-207.

Plaintiff's attorney asked the VE to add an inability to keep regular attendance to the first hypothetical. The VE testified that this would preclude all work. AR 207.

As to the second hypothetical, Plaintiff's attorney asked the VE to assume that this person was moderately limited, i.e., was affected but not precluded, in his ability to understand, remember and carry out detailed tasks, to maintain attention and concentration for extended periods, to work in proximity with others without being distracted, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public. This person could perform simple, repetitive tasks. The VE testified that this person could not perform Plaintiff's past relevant work or any other work in the national economy. AR 207-208.

Medical Evidence

Treatment notes from Golden Valley Health Centers indicate that on February 20, 2003, Plaintiff complained of depression after her two daughters were sexually abused by her

boyfriend. Her affect was flat. She was diagnosed with major depressive disorder and prescribed Zoloft. AR 127.

  On March 13, 2004, Cesar Garcia, LCSW, wrote a letter indicating that Plaintiff was being treated for symptoms of post-traumatic stress disorder and major depressive disorder. He described several relationships in which she and her children were "brutalized." She has daily flashbacks, depressed mood, and suicidal ideation with no intent or plan. She socially isolates herself and has a loss of interest, anger outbursts, fatigue, paranoia, hypervigilance, irritability, anxiety, panic attacks, panic attacks with agoraphobia, difficulty sleeping, difficulty concentrating, headaches, a tense feeling all the time, heart palpitations, shortness of breath, poor short term memory and difficulty tolerating noise, crowds and stress. AR 140.

  On March 18, 2004, Plaintiff underwent a consultive psychiatric examination performed by Charlotte S. Hamilton, M.D. Plaintiff complained that she was afraid of things, was depressed and had attention deficit hyperactivity disorder. She reported that she had no psychiatric complaints prior to her child revealing to her that she was sexually molested in the past by Plaintiff's boyfriend. Plaintiff reported that she was arrested for burglary in 1987, 1988 and 1989, with subsequent incarceration. Plaintiff was able to keep pace with questions and tasks during the evaluation. On mental status examination, Plaintiff was cooperative, friendly, engaged and outspoken. Her thought process was linear and goal directed, but she reported an ongoing fear over the past year of her children being sexually molested. Plaintiff described her mood as "afraid, anxious and sometimes sad," and she exhibited a full range of affect during the interview, at times appearing somewhat anxious and fidgety. She was oriented to person, place, time, date and situation, and her immediate, recent and long term memory were intact. Her fund of knowledge was poor and she had trouble with calculations. Her concentration appeared intact and she was able to carry out three steps of a three-step direction. She appeared to have good judgment. AR 129-132.

  Dr. Hamilton diagnosed adjustment disorder with mixed anxiety and depressed mood, chronic. Her current GAF score was 60. Dr. Hamilton noted that after nine moths of medication trials and counseling, Plaintiff reported no significant improvement. Her illness, as presented,

would be expected to respond to currently available medical and psychological treatment interventions.  With more aggressive pharmacological and counseling management, significant progress should be evident over the next four to six months.  AR 132.

Dr. Hamilton explained that Plaintiff demonstrated the ability to concentrate and follow directions quite well throughout the interview.  Her memory was intact.  Her inadequate calculations seemed to be related to a deficiency in math skills.  She demonstrated the ability to perform simple and repetitive tasks and there was no evidence that she would have difficulty performing more complex tasks.  She would be expected to have some difficulty responding appropriately to coworkers or supervisors initially, but this should improve as time passes and familiarity develops.  She would be expected to have difficulty dealing with the public secondary to her currently described anxieties.  Regular attendance, but not compliance with safety procedures, may be compromised on the basis of avoidance issues.  Her ability to deal with changes in a routine work setting might also be compromised due to anxiety issues.  Dr. Hamilton opined that Plaintiff was not capable of handling her own funds.  AR 133.

On May 18, 2004, State Agency physician Susan Regan, M.D., completed a Psychiatric Review Technique form.  Dr. Regan opined that Plaintiff had the medically determinable impairments of depressed mood secondary to adjustment disorder, chronic, and mixed anxiety. In rating her functional limitations, Dr. Regan opined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace.  AR 141-155.  This opinion was affirmed on August 2, 2004 and August 4, 2004.  AR 141.

Dr. Regan also completed a Mental Residual Functional Capacity Assessment form.  She opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions.  She was also moderately limited in her ability to maintain attention and concentration for extended periods and in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  She was moderately limited in her ability to work in coordination with or proximity to others without being distracted by them.  She was moderately limited in her ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  She was moderately limited in her ability to interact appropriately with the general public.  Plaintiff was capable, however, of performing simple, repetitive tasks but needed limited contact with the public due to her depression and anxiety.  AR 155-157.  This was affirmed on August 4, 2004.  AR 157.

On July 24, 2004, Mr. Garcia completed a Mental Disorder Questionnaire form.  He has treated Plaintiff on a weekly basis since April 2003.  He last treated her on July 17, 2004.  Mr. Garcia described Plaintiff as anxious, apprehensive, fearful and irritable.  She does not have problems with daily activities, except she has some difficulty shopping because she avoids going to public places.  She isolates herself and has decreased social interactions.  She is easily distracted, has poor concentration, poor short term memory, impaired judgment, poor impulse control, difficulty getting along with others and is unable to tolerate work environment stress.  He described her prognosis as guarded.  He expected some improvement but noted that she is unable to tolerate therapy to process the abuse because it is too traumatic.  AR 135-139.

On November 19, 2005, Mr. Garcia submitted a Mental Assessment form.  He opined that Plaintiff was markedly limited in her ability to remember locations and work-like procedures and in her ability to understand, remember and carry out detailed instructions.  She was moderately limited in her ability to understand, remember and carry out very short and simple instructions, as well as in her ability to maintain attention and concentration for extended periods.  She had marked limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  She has moderate limitations in her ability to sustain an ordinary routine without special supervision and in her ability to work in coordination or in proximity to others without being distracted by them.  She was moderately limited in her ability to made simple work decisions, in her ability to interact appropriately with the general public, in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  She was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and

1  to perform at a consistent pace without an unreasonable number and length of rest periods.  She
2  was slightly limited in her ability to ask simple questions or request assistance.  Finally, she was
3  moderately limited in her ability to respond appropriately to changes in the work setting, in her
4  ability to be aware of normal hazards and take appropriate precautions, in her ability to travel in
5  unfamiliar places or use public transportation, and in her ability to set realistic goals or make
6  plans independently of others.  AR 166-169.

7       ALJ's Findings

8       The ALJ determined that Plaintiff had the severe impairments of anxiety and depressive
9  disorder.  Despite this, she retained the residual functional capacity ("RFC") to perform simple,
10 repetitive tasks with one to two step instructions, with occasional, limited contact with the
11 public.  Based on the testimony of the VE, the ALJ determined that Plaintiff could perform her
12 past relevant work as a motel housekeeper, as a color press production worker, as a janitor, or as
13 a Foster Farms worker.  He therefore found Plaintiff not disabled.  AR 17-20.

14                              **SCOPE OF REVIEW**

15      Congress has provided a limited scope of judicial review of the Commissioner's decision
16 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
17 the Court must determine whether the decision of the Commissioner is supported by substantial
18 evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"
19 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
20 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
21 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
22 401.  The record as a whole must be considered, weighing both the evidence that supports and
23 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
24 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
25 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
26 This Court must uphold the Commissioner's determination that the claimant is not disabled if the
27 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
28

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (anxiety and depressive disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) retains the RFC to perform her past relevant work. AR 17-20.

Plaintiff argues that the ALJ presented an incomplete hypothetical to the VE and improperly assessed her credibility.

**DISCUSSION**

A.  Hypothetical Question

Plaintiff argues that the ALJ failed to include certain limitations in his hypothetical questions posed to the VE. Specifically, she contends that the ALJ found that she had moderate

limitations in maintaining concentration, persistence and pace, and in maintaining social functioning, but that he failed to include these limitations in his hypothetical questions.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

By challenging the hypothetical question, Plaintiff is indirectly challenging the RFC finding, which is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

The ALJ found that Plaintiff had the RFC to perform all levels of physical exertion, but that she was limited to simple, repetitive tasks with one to two-step instructions and could have limited or occasional contact with the public. AR 20. Plaintiff does not dispute this portion of his finding.

In another portion of his opinion where the ALJ examines the severity of Plaintiff's mental impairment, he finds that in light of Plaintiff's mental disorder, she "is moderately limited in her ability to maintain social interaction and in her ability to maintain concentration, persistence, or pace." AR 17. Based on this statement, Plaintiff contends that the ALJ should have included these moderate limitations in the hypothetical question posed to the VE.

As explained above, the ALJ conducts a five-step sequential inquiry in determining whether a claimant is disabled. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). At step two, the ALJ determined that Plaintiff had the severe impairments of anxiety and depressive disorder. At step three, he determined that these impairments were not "severe" enough to meet or medically equal any of the listed impairments. AR 17. In making the step two and three findings, the ALJ followed 20 C.F.R. § 404.1520a(c), which sets forth the method used to rate the degree of functional limitation related to mental impairments:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(3)-(4).

After the ALJ rates the degree of functional limitations resulting from a claimant's impairments, the ALJ determines the severity of those mental impairments. 20 C.F.R. § 404.1520a(d). If a mental impairment is found to be severe, the ALJ will determine whether it meets, or is equivalent in severity to, a listed mental disorder. 20 C.F.R. § 404.1520(d)(2). If the ALJ determines that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ then moves on to determine the claimant's RFC. 20 C.F.R. 404.1520a(d)(3).

Here, the ALJ analyzed the degree of Plaintiff's functional limitations in maintaining social functioning and maintaining concentration, persistence or pace as part of his step two and three findings. Having determined that Plaintiff's mental impairments were severe, but that they did not meet or equal a listed impairment so as to be presumptively disabling, the ALJ determined Plaintiff's RFC. Unlike the analysis at steps two and three where the ALJ examines the degree of limitation, RFC is the most a claimant can do, "*despite* [his] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

1    Therefore, although the ALJ found moderate limitations in maintaining social functioning
2    and moderate limitations in maintaining concentration, persistence and pace, he found that
3    Plaintiff could perform simple, repetitive tasks and could have occasional contact with the
4    public.  Indeed, this RFC finding appears consistent with the ALJ's findings at step two and three
5    because it takes into account her limitations in social functioning and concentration.
6    In any event, contrary to Plaintiff's assumption, a moderate limitation at steps two and
7    three does not necessarily translate into a disabling RFC.  The Ninth Circuit recently explained
8    that the "step two and step five determinations require different levels of severity of limitations
9    such that the satisfaction of the requirements at step two does not automatically lead to the
10   conclusion that the claimant has satisfied the requirements at step five."  *Hoopai v. Astrue*,
11   __F.3d __ (2007 WL 2410178) (9th Cir. 2007) (a step-two finding that a non-exertional
12   impairment is severe does not require that the ALJ seek the assistance of a vocational expert at
13   step five); *see also* 20 C.F.R. § 416.920a; SSR 96-8p ("The adjudicator must remember that the
14   limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment
15   but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential
16   evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential
17   evaluation process requires a more detailed assessment . . .")
18   The ALJ did not err in failing to include the above limitations in the RFC and he was
19   therefore not required to include them in the hypothetical question.  Plaintiff's claim is without
20   merit and must be denied.
21   B.   Plaintiff's Credibility
22   Finally, without explanation or support, Plaintiff contends that the ALJ's credibility
23   finding was "vague and ambiguous as the ALJ provides no factual support or foundation as to the
24   extent to which Plaintiff's 'statements concerning the intensity, duration and limiting effects of
25   these symptoms are not entirely credible.'"  Opening Brief, at 6.
26   The ALJ is required to make specific findings assessing the credibility of plaintiff's
27   subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is
28   not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

12

*Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Contrary to Plaintiff's suggestion, the ALJ set forth numerous findings that were specific enough to allow the Court to conclude that he did not arbitrarily reject Plaintiff's allegations. The ALJ began his credibility analysis by explaining that the objective medical evidence did not necessarily support her claims as to the severity of her impairments. For example, although Plaintiff sees a social worker regularly, she had not been referred to a psychiatrist or psychologist for treatment, nor does she have a history of inpatient psychiatric admissions. AR 19. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). The ALJ also noted that Plaintiff had been taking the same medication for depression and to aid sleep for the past two years. The ALJ inferred that Plaintiff must have been receiving "optimum results" as she would have otherwise requested a change. AR 19. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

1	Moreover, although Plaintiff testified that she experienced frequent headaches , the ALJ
2	noted that she has not reported the headaches to her doctor, which suggests "that they have no
3	more than a minimal effect upon her ability to function and are apparently resolved with over-
4	the-counter remedies." AR 19. Indeed, although Plaintiff testified that her headaches hurt and
5	that she had to lay down, she stated that she had not told her doctors about the headaches because
6	she did not think that they were something bad and/or she forgets to tell them. AR 198-199.
7	Finally, the ALJ noted that Dr. Hamilton found that during her examination, Plaintiff was "quite
8	able to keep pace with questions and tasks during the evaluation." AR 19.

9	The ALJ next examined Plaintiff's daily activities. For example, she is able to take care
10	of her five children and perform household tasks, including finances. AR 19. The ALJ found
11	that the "mental and physical capabilities requisite to performing many of these household tasks
12	and interactions replicate those necessary for obtaining and maintaining employment." AR 19.
13	*Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (citing *Burch*, 400 F.3d at 681).

14	The ALJ then moved on to note the inconsistencies between Plaintiff's testimony and her
15	work record. Although Plaintiff initially testified that she worked only as a hotel maid, when
16	asked subsequently, she stated that she also worked for Foster Farms and as a lighting fixture
17	assembler. AR 19. Administrative documents further show that Plaintiff worked at
18	McDonald's, at a janitorial service and as a babysitter, while others show that she worked only as
19	a hotel maid. AR 71, 76.

20	Finally, the ALJ questioned Plaintiff's credibility based on her prior criminal history. She
21	was arrested for burglary in 1987, 1988 and 1989, with subsequent incarceration. AR 20. Again,
22	the ALJ is entitled to use ordinary techniques to assess credibility.

23	Based on the above, the Court is able to conclude that the ALJ did not arbitrarily reject
24	Plaintiff's allegations. Plaintiff's claim is without merit and should be denied.

25	**RECOMMENDATION**

26	Based on the foregoing, the Court finds that the ALJ's decision is supported by
27	substantial evidence in the record as a whole and is based on proper legal standards.
28	Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Juanita Rodriguez.

These findings and recommendations will be submitted to the Honorable Oliver W. Wanger, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 25, 2007**        /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE